OPINION
{¶ 1} Plaintiff-appellant, Irving Barkan, Administrator of the Estate of William A. Barkan, appeals from a judgment of the Ohio Court of Claims finding that Diane Gorgas, M.D., and Sorabh Khandelwal, M.D. (collectively referred to as "the doctors") were not entitled to personal immunity pursuant to R.C. 9.86. For the following reasons, we reverse that judgment.
 {¶ 2} By complaint filed March 1, 2001, appellant alleged that William A. Barkan ("Barkan") had open-heart surgery at The Ohio State University Medical Center ("OSUMC") on August 30, 1999, and was discharged on September 3, 1999. On or about September 18, 1999, Barkan went to the OSUMC Emergency Department complaining of a variety of symptoms, including fatigue, nausea, diarrhea and vomiting. After being treated, Barkan was discharged that same day. Barkan died two days later. Appellant's complaint alleged that Barkan's death was due to the negligence of the doctors and other employees at OSUMC who diagnosed and treated Barkan.
 {¶ 3} After a status conference, the trial court ordered an evidentiary hearing to determine whether the doctors were entitled to personal immunity pursuant to R.C. 2743.02(F) and R.C. 9.86. Eventually, the parties and the doctors filed depositions and briefs on the immunity issue. The trial court determined that the doctors acted outside of the scope of their employment with the state and were not entitled to personal immunity. The judgment entry included Civ. R. 54(B) language that there was no just cause for delay.
 {¶ 4} Appellant appeals from that judgment, assigning the following error:
 {¶ 5} "The Court of Claims erred in determining that Drs. Gorgas and Khandelwal were [not] entitled to personal immunity pursuant to R.C. 9.86."
 {¶ 6} Appellant contends that the trial court erred in determining that the doctors were not immune. The trial court, in making this determination, noted that Dr. Gorgas was the attending physician when Barkan came to the emergency department. Barkan was first seen by Brian Estand, M.D., a senior chief resident who was being supervised by Dr. Gorgas. After talking with Estand about his evaluation, Dr. Gorgas talked with Barkan, examined him, ordered diagnostic studies, evaluated test results, prescribed therapeutic intervention, and approved Barkan's discharge. The trial court also noted that Dr. Gorgas' private employer, Emergency Care Associates, Inc. ("ECAI"), determined the amount of Barkan's hospital bill and received payment from Barkan's insurance. The trial court further found that Dr. Khandelwal was the attending physician after Dr. Gorgas' shift ended and it was he who allowed Barkan to be discharged from the hospital.
 {¶ 7} A determination as to whether or not a state employee is entitled to personal immunity is governed by R.C. 2743.02(F) and9.86. R.C. 2743.02(F) provides, in pertinent part:
 {¶ 8} "A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of his employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86
of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action."
 {¶ 9} R.C. 9.86 states, in part:
 {¶ 10} "* * * [N]o officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner."
 {¶ 11} The question of whether the doctors are entitled to immunity is a question of law. Nease v. Medical College Hosp. (1992),64 Ohio St.3d 396, 400, citing Conley v. Shearer (1992), 64 Ohio St.3d 284,292. However, the question of whether the doctors acted manifestly outside the scope of their employment is a question of fact. See Lowry v. Ohio State Highway Patrol (Feb. 27, 1997), Franklin App. No. 96AP-835; Smith v. Univ. of Cincinnati (Nov. 29, 2001), Franklin App. No. 01AP-404.
 {¶ 12} This court has had many opportunities to address the immunity of physicians who were employed simultaneously by the state, as well as by a private employer. See id. Although these cases identify and discuss a variety of different factors relevant to an immunity determination, the key factor in this determination is whether the patient was essentially the doctor's private patient or whether the doctor treated the patient in his or her capacity as an attending physician supervising residents. Kaiser v. The Ohio State Univ., Franklin App. No. 02AP-316, 2002-Ohio-6030, at ¶ 15; Ferguson v. The Ohio State Univ. Med. Ctr. (June 22, 1999), Franklin App. No. 98AP-863.
 {¶ 13} Dr. Gorgas testified in her deposition that she was the attending physician when Barkan came into the emergency department. As the attending physician, Dr. Gorgas supervises residents, sees every patient that goes through the emergency department, and provides or directly supervises the care each patient receives. Dr. Gorgas has no separate private practice other than working at OSUMC and receives no referrals at the hospital. When Barkan came to the emergency department, he was first examined by a senior resident, Brian Estand, M.D. A resident's initial examination normally consists of obtaining a patient's history, performing a physical exam and developing a diagnosis and treatment plan. After Dr. Estand's examination, Dr. Gorgas examined Barkan herself and then discussed the patient with Dr. Estand to determine how to proceed. Dr. Gorgas testified that she signed Barkan's emergency department record indicating that she had examined Barkan and discussed the patient's diagnosis and treatment plan with the resident. Dr. Gorgas had not treated Barkan before and he was not referred to her by anyone. Dr. Gorgas testified that she treated Barkan in her role as an attending physician supervising a resident, Dr. Estand. Dr. Khandelwal testified that he did not treat Barkan.
 {¶ 14} These facts are strikingly similar to the facts in Scarberry v. The Ohio State Univ. (Dec. 3, 1998), Franklin App. No. 98AP-143. In that case, Dr. Brooks was an attending physician at the OSUMC emergency department when the decedent was admitted. Dr. Brooks also was employed by ECAI and received a majority of his salary from ECAI. Dr. Brooks had never seen or treated the decedent before seeing him in the emergency department. The decedent was first seen by a resident and then by Dr. Brooks, who testified that he spent as much time with the decedent as the resident did and even treated the decedent independently of the resident. ECAI billed the decedent for Dr. Brooks' services. Nevertheless, this court found that, because the decedent was not specifically referred to Dr. Brooks and because he only saw the decedent in the emergency department, Dr. Brooks was providing medical services to the decedent in his capacity as the supervisor of a resident physician. Therefore, Dr. Brooks was entitled to personal immunity. See, also, Chitwood v. University Med. Ctr. (May 5, 1998), Franklin App. No. 97AP-1235 (finding emergency department attending physician immune when physician only saw patient through the emergency department and only in supervisory role).
 {¶ 15} In a similar case, this court found another emergency department attending physician immune from liability. Ferguson, supra. In that case, Dr. Little was an attending physician in the OSUMC emergency department when plaintiff came to the emergency department. Dr. Little also worked for ECAI and received a majority of his salary from ECAI. Plaintiff was seen by a resident who examined and diagnosed him and ordered an ultrasound test. Dr. Little did not recall seeing plaintiff but signed off on the emergency department record. Even though ECAI billed plaintiff for Dr. Little's services, we found that the doctor's only involvement was to supervise the care of plaintiff as an attending physician and found Dr. Little immune.
 {¶ 16} In finding the doctors had acted outside the scope of their employment with the state in the case at bar, the trial court placed great emphasis on the doctors' ultimate decision-making authority to discharge Barkan as evidence that they treated him as a private patient. In making this determination, the trial court relied on a case that was recently reversed by this court. Kaiser, supra. In Kaiser, which involved facts very similar to the present case, we reversed a decision finding that an emergency department-attending physician had acted outside the scope of his employment with the state. In finding the doctor immune, we noted that "the mere fact that the attending physician makes the ultimate decision as to admit or discharge a patient is not determinative of whether he or she acted within the scope of employment." Id. at ¶ 24. Therefore, the mere fact that the doctors in the present case had the final authority to discharge Barkan is not determinative in deciding whether the doctors were acting outside the scope of their employment with the state. Otherwise, by discharging a patient, no attending physician in a state operated emergency department would ever be immune. We refuse to accept such a bright line rule.
 {¶ 17} The trial court also placed great emphasis on the business/billing aspects of the relationship among ECAI, the doctors and OSUMC. In this case, in addition to their duties at OSUMC, both doctors were partners and employees of ECAI. ECAI determined the billing rate for the doctors, billed Barkan's insurance for the services provided to him by the doctors, and received payment from Barkan's insurance. In addition, ECAI paid the doctors' malpractice insurance and paid the majority of the doctors' salaries. While billing may be a relevant factor in determining whether the doctor is acting within the scope of employment, it is not the determinative factor. Ferguson, supra. "This is particularly true in cases where the doctor does not otherwise see patients outside the emergency department." Hopper v. Univ. of Cincinnati (Aug. 3, 2000), Franklin App. No. 99AP-787. In fact, this exact relationship did not preclude this court from finding physicians in Kaiser, Ferguson, and Scarberry to have acted within the scope of their employment with the state in treating patients in an emergency department.
 {¶ 18} Appellee contends that our previous decisions in Wayman and Smith are controlling. We disagree, as both cases are distinguishable from the present matter. In Wayman, the doctor admitted that the patient was a private patient of the doctor's private practice and was treated at the doctor's private office. In Smith, the patient underwent a kidney and pancreas transplant and was treated at a private hospital. Neither case dealt with an attending physician who was allegedly supervising residents while treating patients at a state hospital emergency department.
 {¶ 19} Here, the undisputed evidence demonstrates that the doctors were treating Barkan in their capacity as attending physicians supervising residents in the OSUMC emergency department. Neither doctor had ever treated Barkan before and only treated him because they were the attending physicians when Barkan came into the emergency department. All of the treatment in question occurred in the emergency department. A resident first examined Barkan and brought the case to Dr. Gorgas' attention. It was only then, in supervising the resident, that Dr. Gorgas examined Barkan. Her involvement with Barkan was inextricably tied to her supervisory role in reviewing and approving the resident's diagnosis and treatment plan. The fact that she also examined Barkan and ordered tests is not inconsistent with her role as a supervisor of residents in the emergency department. Scarberry, supra.
 {¶ 20} Dr. Khandelwal's only contact with Barkan was to approve of his discharge. This fact alone does not lead to the conclusion that he acted outside the scope of his employment with the state. Kaiser, supra. Although Dr. Khandelwal also worked for ECAI, Barkan was never billed for Dr. Khandelwal's services. In discharging Barken, Dr. Khandelwal acted solely in his supervisory role as an attending physician, within the scope of his employment with the state.
 {¶ 21} In conclusion, this case is analogous to Ferguson, Scarberry, and Kaiser. In each of those cases, emergency department attending physicians were found immune when they were treating emergency department patients. While we can foresee a case where an emergency department attending physician might treat a patient as a private patient, this is not such a case. The evidence presented here demonstrates that, although Barkan was billed by the doctors' private practice plan and ultimately discharged by Dr. Gorgas, he was not treated by the doctors as a private patient. Barkan was not referred to the doctors and all treatment occurred at the OSUMC emergency department. Barkan was first seen by a resident who examined him and developed a diagnosis and treatment plan. The doctors treated Barkan as attending physicians in their supervisory roles over a resident and, therefore, were acting within the scope of their employment with the state. The trial court erred in finding that the doctors were acting outside of the scope of their employment. Appellant's lone assignment of error is sustained.
 {¶ 22} Having sustained appellant's assignment of error, the judgment of the Ohio Court of Claims is reversed and the case is remanded for further proceedings in accordance with this opinion.
Judgment reversed and remanded.
DESHLER and LAZARUS, JJ., concur.